LEWIS v. NORFOLK & WESTERN RAILWAY CO.

(Filed April 21, 1903.)

1. EVIDENCE—*Pleadings—Admissions.*

Where a paragraph of an answer admits a specific fact and in another part of the same paragraph denies the allegations of the corresponding paragraph of the complaint, the plaintiff is entitled to introduce the admission without introducing the part denying the allegations of the complaint.

2. INSTRUCTIONS—*Evidence—Weight of Evidence—Trial.*

It is not error for the trial judge in commenting upon the testimony of witnesses to use the phrases, "the evidence tends to show" and "evidence tending to show."

3. NEGLIGENCE—*Trespasser—Ordinary Care.*

The evidence in this case warrants an instruction that in dealing with a trespasser a railroad company is not held to the highest degree of care, but is required to use only ordinary care, that is, to do him no intentional or wilful injury.

4. INSTRUCTIONS — *Negligence — Contributory Negligence — Burden of Proof—New Trial.*

The time and order in which the trial court instructs relative to negligence, contributory negligence and burden of proof, in an action for personal injuries, is not sufficient ground for a new trial.

ACTION by Fletcher Lewis, by his next friend, against the Norfolk and Western Railway Company, heard by Judge *Thomas A. McNeill* and a jury, at November Term, 1902, of the Superior Court of PERSON County. From a judgment for the plaintiff, the defendant appealed.

*Boone, Bryant & Biggs* and *W. D. Merritt,* for the plaintiff.

*Guthrie & Guthrie,* for the defendant.

MONTGOMERY, J. Plaintiff brought this action to recover damages on account of personal injuries alleged to have been sustained by the wanton and wilful conduct of the defendant

through one of its employees.   The plaintiff in his complaint alleges that he was induced by the defendant's agent to leave his home in Person County in North Carolina and go to Radford in Virginia to work for the defendant on its railroad, near that place; that after a few days' work for the defendant he was discharged without cause and without pay for his labor; that, without free transportation or without having purchased a ticket he boarded a freight train of the defendant going in the direction of his home, and while the train was moving at a high rate of speed, near Radford, a brakeman on the train came along and ordered the plaintiff to get off the car, and upon his declining to do so he was knocked off the car by the brakeman and greatly injured.

In the answer the defendant denied that the plaintiff was ever in its employment or that he was hurt on its cars or by any of its employees; and for a further defense the defendant averred "that the defendant is informed and believes that the plaintiff while a trespasser, and without the knowledge and permission and consent of the defendant, in the night time, when the defendant could not by the exercise of ordinary care and watchfulness on the part of its employees have seen him or have known of his presence, intending to steal a ride on defendant's freight train, accordingly got aboard of said freight train on the night of August 19, 1900, and while upon said freight train, or in attempting to get off said freight train while it was in motion, either from fright or some other cause, not attributable to any negligence of defendant or misconduct on the part of its employees, the plaintiff fell or jumped off said moving freight train and was thereby injured by his own contributory negligence as aforesaid."

The sixth allegation of the complaint was in the following words: "That while the plaintiff was on the end of said car and while the train was running at a high rate of speed, at

a point on said road not far beyond Radford, a brakeman on said train, whose name is unknown to plaintiff, came along and told the plaintiff to get off said car and the plaintiff told the brakeman that he would do so if he would stop the train, but that he would not do so while the train was running so fast, and when the plaintiff told the brakeman this the brakeman negligently, wrongfully, wilfully, wantonly, cruelly, and without due regard for the safety and life of the plaintiff, knocked the plaintiff off the car with a stick, thereby causing said car wheel to run over and cut off the plaintiff's right arm at or near the elbow, and broke his skull in such a manner that a piece of the bone larger than a silver dollar had to be taken from his head, leaving the brain exposed, with no protection but the skin of his head, thus causing the plaintiff great damage and injury, and also great agony, pain and suffering, and almost wholly incapacitating him for future usefulness to himself and family."

The plaintiff for the purpose of showing that it was the defendant's road upon which he was injured introduced a part of section six of the defendant's answer to allegation six of the plaintiff's complaint, as follows: "The defendant admits that on the night of August 19, 1900, about 3 o'clock a. m., the engineer and fireman in charge of the defendant's engine number 282, while looking ahead of the engine and going from East Radford, Va., to Radford Tower, discovered a colored boy who was afterwards ascertained to be the plaintiff, lying in a wounded condition between the tracks of defendant's railroad at or near the west end of Arch Bridge on Connolley's Creek, but when or how he got there and by what means he became wounded, the defendant has no knowledge or information sufficient to form a belief."

The remaining part of the sixth section of the answer is in these words: "And except as herein admitted, the allegations of article 6 of the complaint are not true as the defend-

ant is informed and believes, and the same are therefore denied."

The defendant objected to the introduction of a part of the sixth section of the answer, insisting that the whole should go in. We can see no error in the admission of the evidence as it was received. It embraced all of the matter which bore upon the allegations made in the sixth article of the complaint as to the place where the plaintiff was injured, *viz*: near Radford on the defendant's railroad. That part of section 6 of the answer which was not offered in evidence had no reference to the place where the plaintiff was injured, but was only a denial of the plaintiff's injury by the defendant or its employees. It was not fragmentary. *Gossler v. Wood,* 120 N. C., 69. The plaintiff did not offer to put in the whole of allegation 6 of the complaint, nor would he have been allowed to do so by the court, and therefore the introduction of the latter part of section 6 of the answer would have been meaningless.

It was insisted here by the counsel of the defendant that although the plaintiff introduced the evidence "for the purpose of showing that it was the defendant's road upon which the plaintiff was injured," it was clear that the real purpose of the plaintiff in offering the evidence was to try to raise a presumption that the plaintiff was injured on the defendant's train and that his injury therefore was attributable to the defendant. In looking through the case, we find not the remotest intimation of any contention on the part of the plaintiff that the finding of the plaintiff in his injured condition, near the defendant's railroad track, afforded a presumption that he was hurt by the defendant's train or its employees, nor was there any allusion to such a presumption in his Honor's charge.

It seems clear that the evidence was competent to sustain the plaintiff's allegation that he was injured upon the

defendant's road.   The plaintiff had already testified that a
brakeman of the defendant had knocked him off the car
a short time before the time when the defendant admitted
he was found between its track.

Second exception.   His Honor in his charge, in reciting
the substance of the testimony of certain of the witnesses
used the expressions "The evidence tends to show," "evidence
tending to show."   The defendant objected to these expres-
sions on the part of the judge on the ground that they inti-
mated his opinion as to the facts and as to the weight of the
evidence.   We see no valid objection to the expressions com-
plained of.   They do not imply an opinion on the part of
the judge that any fact was fully or sufficiently proved.   And
besides, if evidence when offered does not tend to prove or
show a fact material to the issue, it ought not to be received,
(*Short v. Yelverton,* 121 N. C., 95) ; and when evidence is
admitted, that is in effect a ruling by the court that it tends
to prove or show some material fact.   In *Savage v. Davis,* 131
N. C., 159, the judge below in his instructions to the jury
on the question of malice (in a case for damages for malicious
prosecution) said: "There is evidence tending to show that
on several occasions the defendant said if he was not paid,
he would put the plaintiff in the penitentiary, and tending
to show that he started the prosecution to collect his money."
That charge was not disapproved by this court.   It was not,
however, excepted to by the defendant.

Fourth exception.   His Honor instructed the jury that "in
dealing with a trespasser, the defendant is not held to the
highest degree of care, but is required to use ordinary care,
that is, to do him no intentional or wilful injury."   The de-
fendant's first ground of exception to the instruction is that
in no aspect of the evidence on either side and under no con-
tention of either party, did the doctrine of "ordinary care"
or of "due care" or of "reasonable care" (admitted by the

defendant to be interchangeable and synonymous terms) arise in the case.    There was evidence going to show that the plaintiff was ordered by the defendant's brakeman to get off the car while it was in rapid motion; that the plaintiff said if he, the brakeman, would stop the car he would get off; that immediately the brakeman struck him with a stick and knocked him off.    It was decided by this court in the cases of *Pierce v. Railroad,* 124 N. C., 88; 44 L. R. A., 316, and *Cook v. Railroad,* 128 N. C., 333, that a railroad company is responsible for an injury caused by the wrongful act of its employee while acting in the general scope of his employment whether such act is wilful, wanton and malicious, or merely negligent.    Under the plaintiff's evidence the charge of his Honor on the degree of care the defendant owed the plaintiff was not out of place.    In removing the plaintiff who was a trespasser from the car, the brakeman was not required to use the highest degree of care, but would not be allowed to intentionally or wilfully hurt him.    *Pierce v. Railroad* and *Cook v. Railroad, supra.*

The second ground of objection to the instruction is that his Honor's definition of ordinary care, that it is no intentional or wilful injury, was not correct as a legal definition of "ordinary care," and was calculated to mislead and confuse the jury. If it be true that it was not an accurate definition of ordinary care, it is not prejudicial to the defendant.    The clear and unmistakable meaning of his Honor's instruction was that the first issue could not be answered in the affirmative, unless the defendant's employee intentionally and wilfully injured the plaintiff in removing him from the car. His Honor submitted to the jury in connection with that matter an instruction covering the defense of the defendant, in these words: "If the jury should find from the evidence that the plaintiff on the night of the alleged injury voluntarily and in order to get a ride on the defendant's train, without

paying for it, got on the end of a coal car composing a part
of the defendant's freight train, without the knowledge or
consent of the engineer or fireman or other employee of the
defendant, and was on said coal car while the train was run-
ning over defendant's track, and if thereby the plaintiff volun-
tarily placed himself in a dangerous position on the train and
on account thereof fell off the train and was thereby injured,
then the jury should answer the first issue 'No.' "

Tenth exception. After his Honor had given his general
charge and the defendant's special prayers for instruction, he
added in conclusion the following: "The burden of proof is
on the plaintiff on the first issue. I have advised you now
that the burden of proof is on the plaintiff on the first issue
to show you by the greater weight of evidence that he was in-
jured by the wrongful act of the defendant, and, on the third
issue, to show you what damage, if any, he has sustained; and,
upon the second issue, the burden of proof is upon the de-
fendant to show you by the greater weight of evidence that
the plaintiff contributed to his own injury. Now, with these
instructions and on the evidence, retire and say how this
matter is."

The defendant objected to the conclusion of the charge on
the grounds, first, that it was a repetition of what the judge
had said in his main charge, and, second, that it was prejudi-
cial to the defendant in that it emphasized and gave special
prominence to the view that the burden of proof was on the
defendant as to the issue on contributory negligence, and was
directly calculated to break the force of the defendant's spe-
cial instruction and to mislead the jury. The instruction
was perfectly fair to both sides, and the only fault found by
the defendant was as to the time and order in which it was
given. If it could be complained of at all on the latter score,
the error is certainly not such as would justify us in sending

the case back for a new trial. But we think it of not suffi-
cient consequence to be the subject of an exception.

The defendant in this court abandoned its third, fifth,
sixth, seventh, eighth and ninth exceptions.

Affirmed.