IN THE

# SUPREME COURT OF JUDICATURE

OF THE

## STATE OF NEW JERSEY.

NOVEMBER TERM, 1915.

---

CONSTANTINE GRYBOWSKI, ADMINISTRATOR, v. ERIE
RAILROAD COMPANY.

Submitted March 18, 1915—Decided November 5, 1915.

1. A person who is employed by a railroad company in maintaining the effectiveness of a part of the railroad's plant, which is used both in interstate and intrastate commerce, is entitled to maintain an action under the Federal Employers' Liability act, when injured while engaged in such employment.
2. Plaintiff's decedent was working in a manhole under a railroad track in a yard and was just coming out of it when he was run over and killed by a locomotive backing on the track. There was evidence that the engineer made no special observation of the manhole and that no warning was given decedent. There was also evidence that decedent came out of the manhole in response to a signal of a fellow-employe. *Held*, that there was sufficient evidence of negligence to warrant a denial of a motion to direct a verdict in favor of the plaintiff.
3. The doctrine of assumption of risk has no application to such risks as arise solely and directly out of the negligent acts of a fellow-servant. Even if it did so apply, it would have no pertinence in the case of an accident under the Federal Employers' Liability act which declares that every common carrier by rail-

road, engaged in interstate commerce, shall be liable in damages to the personal representative of any employe who shall lose his life while employed in such commerce, when his death results "from the negligence of any of the officers, agents or employes of such carriers."

4. Since the Federal Employers' Liability act of 1908 supersedes all state laws upon the subject of the liability of carriers by railroad, engaged in interstate transportation, to their workmen, injured while employed in such commerce—*Held*, that no state, by subsequent legislation, can impair or curtail the rights conferred upon the employe, or his personal representative, or the liabilities imposed upon the carrier by the federal act.

5. Where a request to charge the jury is made, all that the trial judge is required to do in dealing with such request, when the legal principles embodied therein are sound, and are applicable to the matter under discussion, is to charge the substance thereof.

On appeal from the Hudson Circuit Court.

Before GUMMERE, CHIEF JUSTICE, and Justices GARRISON and MINTURN.

For the appellant, *George S. Hobart.*

For the respondent, *Frank M. Hardenbrook.*

The opinion of the court was delivered by

GUMMERE, CHIEF JUSTICE. This action was based upon the federal statute of April 22d, 1908, entitled "An act relating to the liability of common carriers by railroad to their employes in certain cases." The plaintiff's intestate, on January 11th, 1912, while in the employ of the railroad company at its ashpit, in its Jersey City terminal yard, was run over and killed by a locomotive engine. This ashpit was constructed between and underneath certain of the yard tracks, and incoming locomotives were moved over it so that the ashes which had accumulated during their trips might be dumped into it. The plaintiff's decedent was engaged in cleaning out the ashes therefrom, and was just coming out of the pit when the accident occurred which caused his death.

The trial resulted in a verdict for the plaintiff, and from the judgment entered thereon the defendant company appeals.

The first ground upon which the defendant seeks a reversal of the judgment is the refusal of the trial court to direct a verdict in its favor. This motion was rested upon several grounds —*first*, that the proofs did not bring the case within the federal statute, as the accident to plaintiff's decedent did not happen while the defendant was engaged in interstate commerce, and that the decedent did not come to his death while employed by the defendant in such commerce. We think the motion to direct a verdict upon the ground stated was properly denied. The first section of the federal act provides that every common carrier by railroad while engaging in commerce between any of the several states or territories * * * shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce, or in case of the death of such employe, to his or her personal representatives * * * for such injury or death resulting in whole or in part from the negligence of any of the officers, agents or employes of such carriers. The proofs show that the ashpit was a part of the plant of the defendant company, that it was a necessary part of that plant, and that it was used both in interstate and intrastate commerce. The keeping of it clean, and thereby maintaining its effectiveness, was required equally for both kinds of commerce, just as the keeping in repair of tracks or bridges which are used for both kinds of commerce is a necessary incident to each of them. In *Pedersen* v. *Delaware, Lackawanna and Western Railroad Co.,* 229 *U. S.* 146, it was held that "one engaged in the work of maintaining tracks and bridges in proper condition after they have become and during their use as instrumentalities of interstate commerce is engaged in interstate commerce, and this, even if those instrumentalities are used both in interstate and intrastate commerce;" and the application of this principle led the court to hold that an employe who was injured while repairing a bridge which was so used, by being run down by an intrastate passenger train, was entitled to maintain an action under the federal statute. (NOTE.—It is to be observed that

the syllabus of the cited case shows that the train which ran down the employe was an interstate train. The body of the opinion, however, page 150, shows this statement to be inaccurate, and that the train was an intrastate one.) Although in the Pedersen case it was conceded that the railroad company was engaged in interstate commerce at the time of the occurrence of the accident, the principle of the decision would necessarily have compelled such a finding, even in the absence of the concession, for the *plaintiff* could not, at the time of the accident, have been employed by the carrier in such commerce unless the latter at the same time was engaged therein. Under the law as laid down by the cited case, therefore, and which is controlling upon us, the present case comes within the federal statute.

The second ground upon which the motion was rested was that there was no evidence which would support the conclusion that the accident was the result of any negligence on the part of the defendant, or of any of its agents or employes. The accident occurred from the backing of the engine after it had been run upon the pit, and been brought to a stop after clearing the manhole in which the decedent was working by three or four feet. The engine was backed by the fireman under instructions from the engineer who was at that time upon the ground alongside of it. The engineer testified that before directing the engine to be moved he looked toward the rear to see if everything was clear, and saw no one in the way, but that he made no special observation of the manhole. No warning was given the decedent of the intended movement of the engine, unless the bell was rung by the fireman; and this was a disputed fact in the case. If the bell was not rung, as the jury might have found, then it cannot be said, as a matter of law, that in backing the engine over the manhole without first using reasonable care to ascertain whether anyone was in it and likely to be endangered thereby, and without giving warning of such movement, the engineer and fireman were, each of them, free from negligence. Moreover, there was evidence to show that the decedent came out of the manhole of the ashpit in response to a signal given to him by a fellow-

employe who operated the gas engine which furnished the motive power to hoist the loaded buckets out of the ashpit; and it was for the jury to decide whether it was negligence to give such a signal without first ascertaining whether or not the engine was about to be moved. The motion to direct a verdict upon this ground was, therefore, properly denied.

The third ground upon which the defendant rested its motion was that the plaintiff was barred from a recovery because her decedent had assumed the risk of the accident which produced his death. This ground, also, we think, is without substance. The doctrine of assumption of risk has no application to such risks as arise solely and directly out of the negligent acts of fellow-servants. And if it did so apply, as a general rule, it would have no pertinence in the case of accidents the right of recovery for injuries arising out of which is regulated by the federal statute; for to so hold would be to nullify the declaration of congress that every common carrier by railroad engaged in interstate commerce shall be liable in damages to the personal representative of any employe who shall lose his life while employed in such commerce, when his death results "from the negligence of any of the officers, agents or employes of such carrier."

A further ground of appeal urged before us is that the trial court erred in refusing to charge the jury, in response to defendant's request, that in case of a recovery the plaintiff's damages "must be limited to the expenses of last sickness and burial, not exceeding the sum of $200," as provided by chapter 95 of the pamphlet laws of 1911 (our Workmen's Compensation act). In our opinion this request was properly denied. It has been held by the United States Supreme Court that the Federal Employers' Liability act of 1908 superseded all state laws upon the subject of the liability of carriers by railroad engaged in interstate transportation, to their workmen injured while employed in such commerce. *Second Employers' Liability Cases,* 223 *U. S.* 1; *Seaboard Air Line Railway* v. *Horton,* 233 *Id.* 492. The necessary corollary of this judicial declaration is that no state, by subsequent legislation, can impair or curtail in any degree the rights conferred upon the

employe, or his personal representative, or the liabilities imposed upon the carrier, by that statute.

Lastly, it is asserted that there was error in refusing to charge the defendant's request that if the decedent contributed by his own negligence to the accident, "the damages, if any, that may be found against the defendant must be diminished in proportion to the amount of the negligence of plaintiff's intestate as compared with the combined negligence of the plaintiff's intestate and that of the defendant." As a matter of fact, no such refusal appears in the record. Before the request was submitted the trial judge, in charging the jury, read to it that portion of the federal statute which deals with this matter, and which is in the following words: "The fact that the employe may have been guilty of contributory negligence shall not bar a recovery, but the damages shall be diminished by the jury in proportion to the amount of negligence attributable to such employe," and then said to them: "If you find that plaintiff's intestate was guilty of contributory negligence, then, if you have to find the amount of damages to which decedent's father is entitled, you are to abate or deduct from that sum the amount you shall find represented decedent's proportionate contributory negligence, and your verdict will be for the difference." At the close of his instructions to the jury he refused to charge the request, except as he had already charged it. It is not suggested in counsel's brief that what was said to the jury was not an accurate statement of the law upon the subject, and the defendant was entitled to have nothing more from the mouth of the court. It is elementary that all that the trial judge is required to do in dealing with such requests, when the legal principles embodied therein are sound, and are applicable to the matter under discussion, is to charge the substance thereof. And this, we consider, was done in the present case.

The judgment under review will be affirmed.