A. V. JONES v. NORFOLK SOUTHERN RAILROAD COMPANY.

(Filed 23 October, 1918.)

**1. Verdicts—Interpretation—Instructions—Evidence.**

> The verdict of the jury will be interpreted and allowed significance by reference to the testimony and charge of the court.

**2. Same—Railroads—Flying Switch—Independent Cause—Negligence.**

> In an action by an employee of a railroad to recover damages for an injury received by him while engaged as brakeman on a freight train making a flying switch, there was evidence tending to show that the injury was caused by an unnecessary and sudden stop of the train; and to this latter the judge in his charge restricted the consideration of the jury on the question of the defendant's actionable negligence: *Held,* the verdict was not objectionable on the ground that the making of the flying switch was made an independent subject of such negligence and recovery allowed thereon, though an allegation in the complaint may have so regarded it.

**3. Railroads—Federal Employers' Liability Act—Statutes—Fellow-Servants —Negligence—Assumption of Risks.**

> While at common law the negligence of a fellow-servant was classed among the risks assumed by an employee engaged in a common service,

and an engineer and brakeman on a railroad train come within this classification, the doctrine is controlled by the Federal Employer's Liability Act in cases coming within its intent and meaning; and while section 4 of the act in question recognizes the assumption of risks as a defense in certain instances, section 1 withdraws from the class of assumed risks cases of unusual and instant negligence of a fellow-servant, under circumstances which afford the injured employee no opportunity to know of the conditions or appreciate the attendant dangers, and therein the employer is responsible in damages for the negligence of the employee which caused the injury.

### 4. Same—Flying Switch—Independent Cause.

A brakeman on a freight train, under the Federal Employer's Liability Act, does not assume the risks of the sudden, unusual and unnecessary stopping of the train by the engineer thereof while making a flying switch which, without warning, caused the injury complained of in the action.

### 5. Railroads—Federal Employers' Liability Act—Instructions—Assumption of Risks—Appeal and Error—Harmless Error.

The general definition of the doctrine of assumption of risks, under the evidence in this case, that if the defendant railroad company was accustomed to make these flying switches and the plaintiff to assist in them, he assumed the risks of the incidental dangers, was correct, according to the Federal Employer's Liability Act, taken in connection with the instructions on the evidence as to risks not assumed by the employee, but, if erroneous, was without appreciable significance, and will not affect the result.

### 6. Damages—Instructions—Railroads—Federal Employers' Liability Act—Contributory Negligence.

Where the judge has correctly charged the jury, in the action of an employee of a railroad company to recover damages under the Federal Employer's Liability Act, as to the proportionate reduction of damages in case of contributory negligence, his use of the words, "full measure of damages," in this connection, to express the rule of adjustment in case there was no negligent default on plaintiff's part, is not error or prejudicial to the defendant.

### 7. Evidence—Pleadings—Extracts.

A party to an action may offer in evidence a portion of his adversary's pleadings containing an allegation or admission of a distinct and separate fact relevant to the inquiry, without introducing qualifying or explanatory matter, it being open to the opposing party to introduce such qualifying matter if he so desires.

### 8. Same—Explanation—Contributory Negligence.

The defendant railroad company's actionable negligence being properly made to depend upon its engineer's suddenly and unexpectedly stopping its train in an unusual manner while making a flying switch, it is competent for the plaintiff to put in a clause of the defendant's answer relative to applying air brakes to slow down the train under the circumstances, and for the court to permit the defendant to introduce other portions of the answer, in explaining or qualifying the matter, and materially affecting the admissions, but allegations of contributory negligence, under the facts of this case, do not fall within the rule.

**9. Appeal and Error—Evidence—Experts—Findings—Presumptions.**

Where, under a general objection to his evidence, a witness has testified as an expert, and it appears from the record that he is fully qualified, it will be presumed, on appeal, that the preliminary finding of the trial judge that the witness was an expert had been made or that the appellant had waived it.

**10. Same—Opinion Evidence—Record.**

Where, in an action by an employee against a railroad company to recover damages for a personal injury, the proper stopping of a train by the use of air brakes, etc., is material to the inquiry, and it appears from the record on appeal that a witness was an experienced engineer, qualified by training and experience to express an opinion thereon by his use of engines and appliances exactly similar in structure and operation to that used in the instant case, and calculated to aid the jury to a correct conclusion: *Held*, his estimates and statements of the correct use of such appliances are as to facts relevant to the issue and properly received in evidence, whether in strictness expert evidence or not.

ACTION tried before *Ferguson, J.,* and a jury, at April Term, 1918, of WAKE.

The action is to recover damages for physical injuries to plaintiff, caused by the alleged negligence of defendant company; and the complaint, giving in each the true place and circumstances of the occurrence, states the grievances in two causes of action, in one of which there is direct averment that plaintiff was an employee on defendant's train, engaged at the time as a common carrier of interstate commerce, and a second cause of action without such averment.

Defendant having admitted in the answer that the train at the time was engaged in interstate commerce, the action was tried as one under the Federal Employer's Liability Act, and, on issues presenting the defenses and pleas, recognized by that statute.

On the hearing, the evidence on the part of plaintiff tended to show that on the occasion in question he was an employee on defendant's freight train running from Raleigh, N. C., towards Norfolk, Va., and at or near a station called Simms he was up on a box car, pursuant to orders, in the line of his duty and employment, engaged in making a flying or running switch, by means of which the car was to be placed on the siding at Simms; that the usual method is for the engine to draw the car to a speed required to run the same on the siding of its own momentum; the engine then slows down sufficiently to take up the slack and allow the coupling to be removed, when the engine speeds down the main line, allowing the car to run on the side-track as designed; that the proper way to do this is to slow down gradually, and there is a special appliance on the engine, called the Johnson bar, to enable him to do this without any threatening or unusual jolt; that the engine driving the car, having reached a speed, 10 or 12 miles an hour, "going very fast," by

plaintiff's own testimony, the engineer, by the application of direct air or the unusual manner of applying it, brought his engine to a sudden, unusual and unnecessary stop; that plaintiff, doing what he could to hold himself in place, was thereby thrown upon the track, in front of the car, and run over, causing the loss of one leg, seriously wounding another and painfully lacerating other portions of his person.

A rule offered by defendants, permitting flying switches to be made, contained, among other things, the admonition, "That great care must be exercised at all times in making any flying switch or in kicking cars."

In addition to the rule permitting these flying switches to be made, there was testimony on the part of defendant tending to show that this flying switch was made in the usual way, without causing any sudden or unusual jolt, and that plaintiff fell from the car by reason of his own inattention and negligence.

On issues submitted, the jury rendered the following verdict:

1. Was the plaintiff injured by the negligence of the defendant, as alleged in the complaint? Answer: Yes.

2. Did the plaintiff, by his own negligence, contribute to the occurrence of his injuries, as alleged in the answer? Answer: No.

3. Did the plaintiff assume the risk of the occurrence of the injuries which he sustained and here complained of? Answer: No.

4. What damages, if any, is the plaintiff entitled to recover of the defendant? Answer: $17,500.

Judgment on the verdict, and defendant excepted and appealed.

*Douglass & Douglass and J. S. Manning for plaintiff.*
*R. N. Simms for defendant.*

HOKE, J. It was chiefly objected to the validity of the trial that his Honor refused to hold as a matter of law that plaintiff was barred of recovery by reason of assumption of risk—this on the ground, first, that the making of a flying switch was one of the ordinary incidents of plaintiff's employment; second, that the engineer engaged in making such switch was a fellow-servant, and, on the facts in evidence, his negligence, if it should be established, should be properly classed as one of the assumed risks in the course of plaintiff's employment; but in our opinion neither position can be maintained. The first is closed to defendant by reason of the finding of the jury on the first issue. It is the accepted principle in our procedure that a verdict must be interpreted and allowed significance by proper reference to the testimony and the charge of the court. *Reynolds v. Express Co.,* 172 N. C., 487; *Donnell v. Greensboro,* 164 N. C., 330.

In the present case, while the complaint seems to specify the "making of the flying switch as a separate act of negligence, a perusal of the evi-

dence and the charge of the court will disclose that the making of the switch itself was not allowed as a ground of liability, but that the considerations and decisions of the first issue was restricted to the question whether there was negligence in making such switch by bringing the engine to an unnecessary and unusual stop," the language of his Honor's direct charge on the first issue being as follows:

"If you should find from the evidence, and by the greater weight of the evidence, that the engineer suddenly, by use of air brakes or any other appliance, suddenly and unnecessarily checked the speed of the engine in such a manner as to cause an unusual and unnecessary jar, sufficient to throw the plaintiff from the car, and he was thrown by reason of that from the car and run over and hurt, you will answer the first issue 'Yes'; but if you fail to so find, you will answer it 'No.' "

The verdict on the first issue, therefore, having eliminated "the making of a flying switch as a ground of liability," that fact as a separate circumstance is withdrawn from consideration also on the question of assumption of risk. And this, too, is the final answer to the second ground of defendant's objection; though, as argued, this presents other questions that it may be well to consider. At common law, or under the later decisions of the common-law courts, the negligence of a fellow-servant was classed among the risks assumed by an employee engaged in a common service, and on the facts of this record the engineer and brakeman are undoubtedly fellow-servants within the meaning of the principle. *New England R. R. v. Conroy,* 175 U. S., 323; *B. & O. Ry. v. Baugh,* 149 U. S., 369.

This cause, however, coming under the Federal Employer's Liability Act, it is fully established that the statute itself affords the exclusive and controlling rule of liability, and the question presented must be determined in accord with its provisions applicable and authoritative Federal decisions construing them. *Belch v. Seaboard Air Line,* at the present term, citing *Erie R. R. v. Winfield,* 244 U. S., 170; *N. Y. Central v. Winfield,* 244 U. S., 147; *St. Louis, &c., R. R. v. Hesterly, Admr.,* 228 U. S., 702; Second Employer's Liability Cases, 223 U. S., 1.

While the law in question clearly recognizes assumption of risk as a defense in certain instances, under section 4 such a position is absolutely inhibited in cases where the violation of a Federal statute, enacted for the protection of the employees, contributed to the injury or death of employee; and by correct deduction from the terms and meaning of section 1, making railroads engaged as common carriers of interstate commerce liable in damages for injuries or death caused by the negligence of their officers, agents, or employees, the negligence of fellow-servants is withdrawn from the class of assumed risks in cases of unusual and instant negligence and under circumstances which afforded the injured

employee no opportunity to know of the conditions or appreciate the attendant dangers. This doctrine of assumption of risk is based upon knowledge or a fair and reasonable opportunity to know, and usually this knowledge and opportunity must "come in time to be of use." 26 Cyc., p. 1202, citing 160 Ind., p. 583. This principle is very generally approved in the cases and text-books on the subject; and in authoritative Federal decisions construing the act in question, in reference to the negligence of fellow-servants and the incidental assumption of risks, it has been held that the effect of this first section is to place the conduct of fellow-servants on the same plane as the employer himself in such cases, and it is fully recognized that an employee does not assume the risks of his employer's negligence unless, as stated, he is given a fair opportunity to know and appreciate the risks to which he is thereby subjected. *Chesapeake & Ohio Ry. v. De Atly,* 241 U. S., 311; *Yazoo, &c., Ry. v. Wright,* 234 U. S., 376; *Seaboard Air Line v. Horton,* 233 U. S., 492; *Gila Valley, &c., Ry. v. Hall,* 232 U. S., 94; *Texas & Pacific Ry. v. Behymer,* 189 U. S., 905; 2 Employer's Liability Cases, 223 U. S., 1; *Grybowski v. Erie R. Co.,* 88 N. J. L., 1 (95 At., 764); Richey on Fed. Emp. Liability Act, sec. 59. In *Gila Valley Ry. v. Hall* the general position is stated as follows:

"An employee assumes the risk of dangers normally incident to the occupation in which he voluntarily engages, so far as they are not attributable to the employer's negligence; but the employee has the right to assume that his employer has exercised proper care with respect to providing safe appliances for the work, and is not to be treated as assuming the risk arising from a defect that is attributable to the employer's negligence until the employee becomes aware of such defect, or unless it is so plainly observable that he may be presumed to have known of it.

"In order to charge an employee with the assumption of a risk attributable to a defect due to the employer's negligence, it must appear not only that he knew (or is presumed to have known) of the defect, but that he knew that it endangered his safety; or else such danger must have been so obvious that an ordinarily prudent person under the circumstances would have appreciated it."

In *Chesapeake & Ohio Ry. v. Atley,* where an employee was injured in the endeavor to board a moving train in the course of his employment, and was injured by the unusual speed of the engine, it was held as follows:

"The Employer's Liability Act abrogated the common-law fellow-servant rule by placing negligence of a coemployee upon the same basis as negligence of the employer.

"In saving the defense of assumption of risk in cases other than those where the carrier's violation of a statute enacted for the safety of em-

ployees contributed to the injury or death, the Employer's Liability Act places a coemployee's negligence, where it is the ground of the action, in the same relation as the employer's own negligence would stand to the question whether a plaintiff is to be deemed to have assumed the risk.

"A railroad employee, having voluntarily entered an employment requiring him on proper occasions to board a moving train, assumes the risk normally incident thereto, other than such risk as may arise from the failure of the engineer to use due care to operate the train at a moderate rate of speed, so as to enable his coemployee to board it without undue peril.

"Such an employee may presume the engineer will exercise due care for his safety, and does not assume the risk attributable to operation at unduly high speed until made aware of danger, unless the undue speed and consequent danger are so obvious that an ordinarily careful person in his situation would observe the speed and appreciate the danger.

"An employee is not bound to exercise care to discover extraordinary dangers arising from the negligence of the employer or of those for whose conduct the employer is responsible, but may assume that the employer or his agents have exercised proper care with respect to his safety until notified to the contrary, unless the want of care and the danger are so obvious that an ordinarily careful person, under the circumstances, would observe and appreciate them."

It will be noted that this was an action under the Employers' Liability Statute and bears with much directness on the facts of the present case. And *Yazoo, etc., Ry. v. Wright* was also a case under the Employers' Liability Act and holding that no case of assumption of risk was presented when an employee was injured by negligence of the master or fellow-servant and the circumstances gave no opportunity to know the danger "in time to be of use."

In *Ry. v. Behmyer, supra,* a case where an employee had recovered for injuries attributable to an unusual and sudden jerking of a freight train, *Associate Justice Holmes,* delivering the opinion in affirmance of the judgment below, said: "No doubt a certain amount of bumping and jerking is to be expected on freight trains, and, under ordinary circumstances, cannot be complained of, yet it can be avoided if necessary, and when the particular and known conditions of the train makes a sudden bump obviously dangerous to those known to be on the top of the cars, we are not prepared to say that a jury would not be warranted in finding that an easy stop is a duty. If it was negligent to stop as it did stop, the risk of it was not assumed by plaintiff." Citing *Tex. Pac. Ry. v. Archibald,* 170 U. S., 665-672.

The case *Boldt v. Ry.,* 245 U. S., 442, a decision very much relied on by defendant, does not antagonize the position approved and applied in

the cases cited. In *Boldt's case,* "The intestate of plaintiff, while between cars in a freight yard helping to repair a faulty coupler, was killed by the impact of a string of cars moving by gravity under the control of a brakeman. It was contended that the brakeman negligently permitted the moving cars to strike with too great violence, and that the company failed to promulgate adequate rules on the subject, with evidence to support both claims." There was also evidence tending to show that it was usual to allow the moving cars to strike others that were stationary with force sufficient to make the coupling, etc. On the trial below there was verdict for the company, and on writ of error by plaintiff the single exception insisted on was the refusal of the trial court to give the following instruction asked by him: "The risk the employee now assumes since the passing of the Federal Employers' Liability Act is the ordinary dangers incident to his employment which does not now include the assumption of risks incident to the negligence of the owner's officers, agents and employees."

In overruling the exceptions, the Court, adhering to its former position that the act had the effect of placing the negligence of a fellow-servant in the same category as that of the employer's, held that the prayer for instruction was too broadly stated, as the employee, as a rule, assumed the "extraordinary risks caused by the master's negligence where they are obvious or fully known and appreciated by him"; but, as will be readily seen, the case gives no support to the position that the employee assumes the risks incident to an act of negligence by the employer or fellow-servant where no opportunity was afforded to know or appreciate the conditions or its attendant dangers.

This being, in our opinion, the correct principles applicable, and the jury, under the charge of the court, having, as stated, established by their verdict on the first and second issues that plaintiff was thrown from the car and run over and injured solely by reason of the sudden, unusual and unnecessary manner in which the engine and car were stopped by the engineer, an instant act of negligence on his part, we think defendant's motion was properly disallowed and his Honor correctly ruled that, on the facts so established, the defense of assumption of risk was not available to defendant.

It was further objected that his Honor gave an erroneous definition of assumption of risk. The court charged the jury that if the company was accustomed to make these flying switches and plaintiff to assist in them, he assumed the risk of the incidental dangers, and his general definition of the principle seems to be in accord with the decisions on the subject. But having restricted the fact of liability on the first issue to the single question whether the engineer made the flying switch negligently by bringing his engine to an unnecessary and unusual and sud-

den stop, and this having been determined in plaintiff's favor, the court, under the authorities, was justified in the ruling that there could be no assumption of risk, and his definition was without appreciable significance, and should not be allowed to affect the result.

It was further insisted that his Honor committed prejudicial error in his charge on the question of damages by saying, in certain aspects, the plaintiff should recover the "full measure of damages," but this exception is without merit. It was used in connection with his Honor's instructions in reference to the effect of plaintiff's contributory negligence on the amount of damages. Having charged that the damages must be proportionately reduced in case there was contributory negligence on part of plaintiff, he used the term "full measure" to express correctly the rule of adjustment in case there was no negligent default on plaintiff's part; and it has been held that the term in any event does not always constitute reversible error. *Texas Ry. v. McCarty,* 49 Tex. Civ. App., 532.

Defendant excepted further to the rulings of the court on questions of evidence. First, that his Honor allowed plaintiff to put in evidence a separate clause of section 5 of the answer as follows: "That in order to disconnect the said moving engine and car, it was necessary, as a part of said operation, to apply air to the engine so as to slow the same down." And further, that he refused to permit defendant to introduce other portions of said answer materially affecting said admissions.

In this connection, his Honor offered to allow defendant, in reply, to introduce the accompanying statements of this paragraph as follows: "That, pursuant to said purpose, the said engine and cars were proceeding along the track and in the usual and customary manner, and the said engine was slowed down and the car uncoupled from said engine." The defendant declined, and in addition offered in evidence the entire remaining portion of the paragraph and excepted to the ruling excluding the additional statement.

It is the settled rule of procedure in this jurisdiction that a party may offer in evidence a portion of his adversary's pleadings containing an allegation or admission of a distinct and separate fact relevant to the inquiry and without introducing qualifying or explanatory matter, the rule being further to the effect that in such case it is open to the opposing party to introduce such qualifying matter if he so desires. *Wade v. Contracting Co.,* 149 N. C., 177; *Sawyer v. R. R.,* 145 N. C., 24; *Lewis v. R. R.,* 132 N. C., 382.

A correct application of the principle is in full support of his Honor's ruling on both questions. The part of paragraph 5 admitted was of a distinct and separate fact relevant to the issue. His Honor offered to allow defendant to introduce in reply any accompanying allegation

which could properly be said to qualify or explain the fact, and the additional allegations of the answer insisted on by appellant averring contributory negligence by plaintiff were in no sense qualifying or explanatory of the fact admitted,. and were therefore properly excluded.

It was contended further for error that the court, over the defendant's objection, allowed in evidence the testimony of the witness S. C. Green, a locomotive engineer, as to the customary and proper manner of making these flying switches and the use of the appliances on the engine provided for the purpose.

On the argument before us, the objection was urged chiefly on the ground that there had been no preliminary finding by the court that the witness was an expert, but no such objection was made on the trial, nor was the court asked or required to make a finding on the preliminary question. The record shows that there was only a general objection to the evidence of the witness; and this being true, assuming that the testimony of the witness was opinion evidence and the record showing that the witness was fully qualified as an expert, the presumption is either that there was a preliminary finding by the court or that the same had been waived. *Lumber Co. v. R. R.,* 151 N. C., 217-220, citing *Britt v. R. R.,* 148 N. C., 37; *Summerlin v. R. R.,* 133 N. C., 550.

Apart from this, and under our decisions, the witness being, as the record shows, qualified by training and experience to express an opinion calculated to aid the jury to a correct conclusion, and speaking to the operation and use of engines and appliances exactly similar in structure and operation to that used in the instant case, his estimates and statement of the correct use of such appliances were facts relevant to the issue and properly received in evidence whether in strictness expert evidence or not. *Tire Setter Co. v. Whitehurst,* 148 N. C., 446; *Britt v. R. R.,* 148 N. C., 37.

There were other exceptions noted, but while they have all been duly considered, being without appreciable bearing. or significance on the results of the trial, they are not further adverted to.

We find no error in the record and the judgment for plaintiff is affirmed.

No error.