The action is by an employee engaged in interstate commerce, and on duty at the time of the occurrence, to recover damages for personal injuries caused by the alleged negligence of defendant company, chiefly in the sudden, unusual, violent, and negligent stopping of a freight train by defendant company or its agents and employees whereby plaintiff received serious and painful physical injury from which he still suffers, etc.
There was denial of liability on the part of defendant — pleas of contributory negligence, assumption of risk — evidence offered by the parties to sustain their respective positions, and on issues submitted the jury rendered the following verdict:
"1. Was the plaintiff injured by the negligence of the defendant, as alleged in the complaint? Answer: `Yes.'
"2. Did the plaintiff assume the risk and danger of such injury? Answer: `No.'
"3. Did the plaintiff, of his own negligence, contribute to his injury, as alleged in the complaint? Answer: `No.'
"4. What damages, if any, is plaintiff entitled to recover? Answer: `$7,500.'"
The court having reduced this verdict to $3,500 damages, "plaintiff's counsel consenting thereto," there was judgment for said sum of $3,500, and defendant excepted and appealed, assigning for error the refusal to sustain defendant's motion for nonsuit. *Page 622 
The action is brought under the Federal Employer's Liability Act, and this being true, the question of substantive liability must be determined according to "its provisions applicable, and authoritative Federal decisions construing the same." Jones v. R. R., 176 N.C. 260-264, citingBelch v. R. R., 176 N.C. 22; Erie R. R. v. Winfield, 244 U.S. 170; N.Y. Central v. Winfield, 244 U.S. 147; St. Louis, etc., R. R. v. Hesterly,Admr., 228 U.S. 702; Second Employers' Liability Cases, 223 U.S. p. 1.
And the action having been instituted in the State Court, the State regulations and rulings as to procedure will control except where the Federal statute makes provision to the contrary; Belch v. R. R.,176 N.C. 22, and authorities cited, among others, Banserman v. Blunt,147 U.S. 647; Quinette v. Pullman Co., 229 Fed., 333, and see, also,Fleming v. R. R., 160 N.C. 196; Horton v. R. R., 169 N.C. 116, opinion by Associate Justice Walker. Considering the record in view of these positions, and on the principal issue as to liability, that of defendant's negligence, it is held in both Federal and State decisions that there must be affirmative proof of negligence of the defendant, the proximate cause of plaintiff's injuries, and while this negligence may be established by circumstantial evidence, the relevant facts must be of such significance as to remove the case from the realm of conjecture and permit the inference of negligence as the more reasonable probability. New Orleans, etc., R. R.v. Harris, Admr., 247 U.S. 367; Sweeney v. Erving, 228 U.S. 233;Looney v. R. R., 200 U.S. 480; Ridge v. R. R., 167 N.C. 510;Fitzgerald v. R. R., 141 N.C. 530.
The principle referred to and applied in these and other decisions of like import is stated in Fitzgerald's case, as follows: "Direct evidence of negligence is not required, but the same may be inferred from facts and attendant circumstances, and if the facts proved establish the more reasonable probability that the defendant has been guilty of actionable negligence, the cause cannot be withdrawn from the jury, though the probability of accident may arise on the evidence."
Again, it is recognized in both jurisdictions that railroad companies in the operation of their freight trains are held to a high standard of care reasonably commensurate with the risks and dangers usually attendant upon the work, and although negligence may not be inferred from the ordinary jolts and jars incident to their operation, it may be imputed where there has been a "sudden, unusual, and unnecessary stopping of such trains, likely to and which do result in serious and substantial injuries to employees or passengers thereon." Texas Pacific Ry. v. *Page 623 Behymer, 189 U.S. 469; Texas Ry. v. Archibald, 170 U.S. 665-673;Indianapolis, etc., Ry. v. Horst, 93 U.S. 291; Jones v. R. R.,176 N.C. 260; Ridge v. R. R., 167 N.C. 510; Suttle v. R. R.,150 N.C. 668; Marable v. R. R., 142 N.C. 557; Cin. N. O. T. P. Ry. v.Evans. Admr., 129 Ky. 152.
Further, the authoritative cases construing the statute are to the effect that as to suits coming under its provisions it abolishes the fellow-servant doctrine by which an employer is relieved from liability for injuries due solely to the negligence of the fellow-servant, and places such negligence "on the same basis as if it had been the negligence of the employer himself," thereby removing much of the uncertainty which had led the courts in many instances to rule that the facts in evidence tending to establish negligence were too conjectural to permit that the issue of liability be submitted to the jury. Chesapeake Ohio Valley Ry. v. D.C.Atley, 241 U.S. 311, and cases cited.
And in reference to the rule of procedure applicable, it is uniformly held in this State that on a motion for involuntary nonsuit, considered with us as equivalent to a demurrer to the evidence, the facts making in favor of plaintiff's cause of action whether appearing in plaintiff's or defendant's evidence, must be taken as true, and construed in the aspect most favorable to him. Aman v. Lumber Co., 160 N.C. 369; Dail v. Taylor,151 N.C. 285; Biles v. R. R., 143 N.C. 78; a position that prevails also in the Federal practice. Chinoweth v. Haskell, 3 Peters, 92; Pawlingv. U.S., 4 Cranch, 219.
In this connection it is contended for defendant that plaintiff has not in his complaint alleged facts sufficient to make out a case of actionable negligence, and therefore defendant's motion for nonsuit should have been allowed. On this question we think the allegations of the complaint in sections 3 and 4, taken in connection with the averments as to negligence, and the conditions and nature of the stopping complained of in section 9, are ample to set forth a cause of action, and if it were otherwise, defendant not having demurred to the complaint or moved to make the allegations more definite, but proceed to trial on a determinative issue, any objection to the complaint on the ground suggested is thereby waived, and in motion for nonsuit must be considered and determined on the evidence relevant to the issue. Bennett v. Tel. Co., 128 N.C. 103; Allen v. R. R.,120 N.C. 548; Whitley v. R. R., 119 N.C. 724.
A proper application of these principles to the facts presented are, we think, in full support of his Honor's decision denying defendant's motion for involuntary nonsuit, it appearing from the plaintiff's testimony that a freight train, without warning or signal, and without necessity, so far as appears, came from a 10-mile speed to a sudden and *Page 624 
complete stop, causing a violent jolt sufficient to knock plaintiff down while he was engaged in the ordinary performance of his duties, and rendering him for a time partially unconscious, and causing him serious and painful physical injuries. Among other things, plaintiff, a witness in his own behalf, testified as to being knocked down, and said: "I was accustomed to the usual and ordinary stopping of freight trains. There was enough difference in this and the usual stop to throw me down on the desk. I had my feet apart and my hand holding on the desk at the time it happened. It was a very unusual method of stopping. Mr. Lewis was the engineer. The train had been handled pretty rough that day. There was no signal given to me that the train was going to stop suddenly."
Speaking of the accident report made out for the company, the witness testified further that Captain Loper, supervising the report, said he had a good mind to put as the cause of the injury "the negligence of the engineer in handling the train," but desisted on the statement of Captain May, the conductor, that it might get Lewis into trouble. Asked the cause of the sudden stop of the train, the witness said it was either a "snap shot" brake or the "direct application of the air." The snap shot brake seems to have been some defect in the mechanical contrivances for applying the air. The defendant's witnesses, the engineer and others, stated there were no snap shot brakes, and no defect in the mechanism for applying the air, and accepting these and other relevant statements making in favor of plaintiff's claim as true, it permits as the more reasonable inference that the sudden stopping and consequent injury was caused by the negligence of the engineer in handling his train. For this negligence the company is held responsible by the express provisions of the statute, and in our opinion the evidence permits and requires that that issue be submitted to the jury.
It is urged for the defendant that the court, in its charge, erroneously recognized the doctrine of res ipsa loquitur as applying to the case, and we were referred to numerous decisions of the Federal Court, to the effect that the position in question has no application to cases between employer and employee. These decisions, however, arose prior to the enactment of the Employers' Liability Act, or in cases which did not come under its provisions. The position withdrawing cases of employee and employer was due chiefly to the prevalence also of the fellow-servant doctrine by which an employer was relieved from liability for injuries due solely to the negligence of the fellow-servant, and from the uncertainties as to the cause of the injury thereby created, the facts in nearly all of the cases indicating the negligence by some fellow-servant as the more probable cause of the injury. The statute having, as we have seen, abolished the fellow-servant doctrine, there is doubt *Page 625 
if the Federal Courts will adhere to the distinction adverted to in cases controlled by its provisions.
The contrary has been held in S. Ry. v. Derr, 240 Fed., 73, and this would seem to be the correct deduction from the premises.
The position, however, as we view it, is not open to defendant on the record. His Honor only referred to the doctrine of res ipsa loquitur as affording a circumstance which required that the issue of defendant's negligence should be submitted to the jury; no specific objection is made to the charge on that account, and on a motion to nonsuit the occurrence itself, and all the accompanying facts and circumstances offered in evidence and which tend to establish liability, must be given consideration.
Again, it is insisted that the entire facts show that defendant is barred of recovery by reason of the assumption of the risks, a defense expressly recognized by the statute, and numerous decisions were cited to the effect that an employee assumed the risks of the jars and jolts which may be expected to occur in the operation of freight trains. The decisions referred to so hold, but it is also the recognized principle that an employee does not assume the risks due to the instant and unexpected negligence of the employer under circumstances which afford the employee no opportunity to know of the conditions that threaten or to appreciate the risks.
In Jones v. R. R., 176 N.C. 260, it was held: "A brakeman on a freight train, under the Federal Employers' Liability Act, does not assume the risks of the sudden, unusual, and unnecessary stopping of the train by the engineer thereof while making a flying switch which, without warning, caused the injury complained of in the action."
And speaking to the question as it prevails under the statute, the Court in the opinion said: "While the law in question clearly recognizes the assumption of risk as a defense in certain instances, under section 4 such a position is absolutely inhibited in cases where the violation of a Federal statute, enacted for the protection of the employees, contributed to the injury or death of employees; and by correct deduction from the terms and meaning of section 1, making railroads engaged as common carriers of interstate commerce liable in damages for injuries or death caused by the negligence of their officers, agents, or employees, the negligence of fellow-servants is withdrawn from the class of assumed risks in cases of unusual and instant negligence and under circumstances which afford the injured employee no opportunity to know of the conditions or appreciate the attendant dangers. This doctrine of assumption of risk is based upon knowledge, or a fair and reasonable opportunity to know, and usually this knowledge and opportunity must `come in time to be of use.' 26 Cyc., 1202, citing 160 Ind. 583. This principle is *Page 626 
very generally approved in the cases and text-books on the subject; and in authoritative Federal decisions construing the act in question, in reference to the negligence of fellow-servants and the incidental assumption of risks, it has been held that the effect of this first section is to place the conduct of fellow-servants on the same plane as the employer himself in such cases, and it is fully recognized that an employee does not assume the risks of his employer's negligence unless, as stated, he is given a fair opportunity to know and appreciate the risks to which he is thereby subjected." Citing Chesapeake Ohio Ry. v. De Atly,241 U.S. 311; Yazoo, etc., Ry. v. Wright, 234 U.S. 376; Seaboard Air Line v.Horton, 233 U.S. 492; Gila Valley, etc., Ry. v. Hall, 232 U.S. 94;Texas Pacific Ry. v. Behymer, 189 U.S. 905; 2 Employer's Liability Cases, 223 U.S. 1; Brybowski v. Erie R. Co., 88 N.J. L., 1 (95 At., 764); Richey on Fed. Emp. Liability Act, sec. 59.
We were also referred by defendant to Patton v. Ry., 179 U.S. 650, as an authority against plaintiff's right to recover on the facts of the present record.
In that case plaintiff, a fireman on an engine drawing a passenger train from El Paso to Toyah and return, some three or four hours after one of those trips had been made and while the engine was being moved in one of the railroad yards at El Paso, attempted to step off the engine and in doing so the step turned, and he fell so far under the engine that the wheels passed over his foot and amputation became necessary. The allegation being that the step turned because the bolt which held it was not securely fastened. It was found that ample and competent inspection was provided for, both at El Paso and Toyah, and no defect had been discovered. There was also testimony that the fireman, for his own convenience, was doing the work at the time before the engine was prepared and inspected for the succeeding trip, and further that the step might have been presently loosened in throwing heavy lumps of coal on the tender by the yardman or other employees in the line of their duties. That case, however, was prior to the enactment of the Employers' Liability Act, and when the fellow-servant doctrine was fully recognized, and the Court, approving the doctrine that while an employer was required to furnish safe and suitable appliances for his workmen, he was not an insurer of their safety, held that on the facts presented there were too many uncertainties, both as to the time and cause of the occurrence to permit that the issue of liability be submitted to the jury.
The case does not seem to be applicable to the facts of this record, there being evidence as stated that the plaintiff has been seriously *Page 627 
injured by sudden, violent, and unusual stopping of a freight train, that this was due to negligence on the part of the engineer in operating it, and for which negligence the company, as shown, is now liable by the express provisions of the statute under which the suit is brought.
We find no error in the record, and the judgment on the verdict is affirmed.
No error.